Johk R. Heilmak, J.
By an order to show cause, petitioner mother seeks to modify a separation agreement which was incorporated in a Mexican divorce decree, so as to permit the removal by the petitioner of her and her seven-year-old daughter to a residence beyond the radius of 50 miles from the City of Poughkeepsie, with reasonable visitation rights to the respondent father in lieu of those provided in the agreement. Respondent opposes the application and offers to take custody of the child if petitioner moves.
The parties were married on or about September 20, 1964 and lived together as husband and wife for several years. They entered into a separation agreement dated December 17, 1969, the applicable provisions of which are as follows:
“5. That the husband agrees that the wife shall have the custody, control and care of the education of the child born of the marriage, without any interference on the part of the *645 husband, and that he will not compel said child to live with him or alienate said child from his said wife in any manner whatsoever, and said husband shall have the right of visitation at reasonable hours; the husband shall have the privilege of taking the child out of the mother’s house during such visits, but such child must be returned by 6:00 p.m. in the afternoon on any visitation day. After the child has reached the age of four (4) years, the husband shall be entitled to take the child overnight one weekend a month and for overnight periods during all school vacations. It is expected and presumed that these visitation rights will be amicably arranged between the parties hereto in the best interests of the child.
“ The mother shall not remove the residence of the child to a location more than fifty (50) miles from the City of Poughkeepsie without the written consent of the husband, and if the mother shall remove the residence of the child to a location more than fifty (50) miles from the City of Poughkeepsie, such action shall constitute a breach of this agreement. ’ ’
The translation of the divorce decree dated December 29, 1969 provides: “ third : The Separation Agreement entered into between the spouses on the 17th., day of December, 1969, in Poughkeepsie, New York, United States of America, is hereby approved in all its terms and provisions, and is incorporated in the decree by reference, but shall survive the decree and be binding on the parties.”
The petitioner also claims that respondent has violated paragraph 7 of the separation agreement by failing to set up a trust fund for the child, but this court upholds the respondent’s contention that such breach is irrelevant to this proceeding.
At a hearing before this court petitioner and her present husband testified in support of the petition. Respondent was the only witness in opposition. Both parties were represented by counsel.
It appears that petitioner’s husband is foreign born and foreign trained as a dental technician with a degree in this field. However, he has been working for an industrial concern in an unrelated field. He finds himself competing with college trained personnel, many of whom have been promoted ahead of him, and he has now gone as far as he can in this field. He has been surveying several areas in various parts of the country for the best opportunity to enter the dental business, and has determined that Dade County, Florida offers the best opportunity, principally due to a population growth of elderly people. It appears that this change of employment has been his idea for some *646 time, and the court is satisfied from the proof adduced at the hearing that this man has been careful and sincere in his investigation of this job opportunity. The allegation of respondent that this move is contemplated to bring the petitioner close to her mother and father, who recently moved to Florida, was countered by the testimony of the petitioner that her father was transferred to Florida at the insistence of his employer, and that the move of the petitioner and her husband was contemplated prior to such transfer. Petitioner’s husband has a definite offer of employment with no guaranteed period, but with opportunity to buy into an expanding business if he can establish his ability in the field. His salary will be $190 per week, as contrasted with his present gross of $360 per week, but he will also have $143 per month Social Security for the girl, of which $100 goes into her bank account and the balance is used for her maintenance. In addition, he has a substantial retirement refund coming from his present employer, and will have similar medical coverage for his family. The petitioner also indicated that she would, if necessary, be able to work in the field for which she is trained, as such job opportunities appear to be good in that area of Florida. The petitioner’s husband believes that he can be making more than his present $18,000 annual salary in a few years. He admits to knowledge of the 50-mile provision in the separation agreement at the time he was married to petitioner, but said that it did not concern him because he then had no intention of moving. He has been married twice previously and supports his two children by $50 per week direct payments. He possesses certain personal property in the form of cash, stock and two automobiles.
Respondent stated that his opposition to the proposed move was that he could not maintain the relationship with his daughter that he has had over the years. He has lost his eyesight and wants to be close to her as she grows up. He has been having regular visits with his daughter but seeks more. He, too, has remarried. He is not presently employed, but will be commencing a master’s degree program at a college approximately 200 miles from Poughkeepsie in September. He plans to continue his visitation with the child if she remains in her present residence. He has an annual income of approximately $19,000 from investments as a result of settlement of a lawsuit. He admitted his financial ability to have substantial visitation with his daughter, whether she resides in this area or in Florida.
The sole consideration of the court in deciding this matter is what will be for the best interests of the child and promote her *647 welfare and happiness. An agreement between the parties is not controlling, nor is a divorce decree provision. (Domestic Relations Law, § 240; Finlay v. Finlay, 240 N. Y. 429; Shakun v. Shakun, 11 A D 2d 724; Lester v. Lester, 178 App. Div. 205, affd. 222 N. Y. 546; Matter of Rich v. Kaminsky, 254 App. Div. 6.)
There appear to be only two cited cases pertinent to the facts herein. In “ Harris ” v. “ Harris ” (57 Misc 2d 672) the mother was moving temporarily to another State to secure an advanced college degree. On the basis of the fitness of the mother, her ability to provide for the financial needs of the child, the legitimacy of her move, and the fact that it was temporary, the court permitted the move as being in the best interests of the child.
In Matter of Susan “ KK ” v. Rudolfo “ KK ” (39 A D 2d 792, affd. 30 N Y 2d 893), the court found that the move to another State was for valid but not compelling reasons, and no change of custody was mandated. The father was found to be a person with financial means to help implement the liberal visitation privileges he had enjoyed in the past.
Both of the above-cited cases were ones in which a father sought to prevent a change of residence, and one of these involved a temporary change of residence. In the instant case the petition has been initiated by the person seeking to move, and the instant case has the added strong sympathy element of the blindness of the respondent father.
The court has carefully evaluated the testimony, observed the witnesses and adjudged their credibility. There does not appear to be any malicious purpose in petitioner’s proposed move, nor does it appear to be an effort to get the child away from the father or prevent visitation. The mother discussed the proposal with the father on several occasions prior to bringing this petition, and has made no effort to just pick up and leave, but on the contrary has said that she would not do so and initiated this petition for the court’s permission. She has made offers of liberal visitation by the father with the child, has offered to pay the transportation costs and even to accompany the child en route, and has offered to put up a bond for her faithful performance of visitation rights. In fact, the mother and her husband canceled a date which they had previously made for this move, including a commitment for housing in Florida, and the husband withdrew his resignation from his employer until this court could hold a hearing.
*648 It is doubtful that the petitioner or her husband would engineer this move and take such a reduction in present income just to spite the father. There is no evidence of any recent animosity between the parents over visitation rights, but rather an adult approach to maintaining the relationship between the father and daughter. While there is not as much certainty in the employment opportunity in Florida as the court would like to see, there is a substantial potential, plus the assurance of the stepfather that he has always worked and supported his children and would continue to do so, to satisfy the court that the move is in the best interests of the family, including the child. The move appears to be legitimate. There is no question as to the fitness of the mother, and the financial and emotional needs of the child appear to be secure and assured for the future. The visitation rights of the father are compelling neither from the sympathy element affecting the father nor the emotional needs of the child. Such rights appear to be assured on a revised schedule, both from the willingness of the mother and the possible financing of such visits.
The application of the mother to move with her husband and the child to Dade County, Florida is granted, and the written consent of the father thereto, provided for in the separation agreement, is dispensed with. The counteroffer of the father to accept custody of the child in the event the mother moves from this area is denied.
The father shall have visitation with the daughter for a period of at least five successive weeks during the months of July and August of each year. The father shall notify the mother not later than May 15 of each year as to what weeks he desires to exercise this right. The father shall also have visitation with the daughter for the seven days following each Christmas Day. The mother shall be responsible for the round trip transportation , costs of the child on all such visits. Any such visitation may be ^extended by written agreement between the father and mother.
In addition, the father may have such other visits with the child in Florida or at the father’s place of residence, at his own expense for transportation, as can be agreed upon between the father and mother. Consent to such visits shall not be unreasonably withheld by the mother.