Audrey R. WEHRKAMP, Plaintiff and Appellant,

v.

Scott R. WEHRKAMP, Defendant and Appellee.

No. 14325.

Supreme Court of South Dakota.

Considered on Briefs March 23, 1984.

Decided Oct. 3, 1984.

Keith R. Smit of Morman, Smit, Shepard, Hughes & Wolsky, Sturgis, for plaintiff and appellant.

Clair R. Gerry of Stuart & Gerry, Sioux Falls, for defendant and appellee.

HENDERSON, Justice.

A divorce was granted to both of these parties by the Second Judicial Circuit Court on June 21, 1983. Appellant, Audrey R. Wehrkamp, appeals the property award provided in the judgment of divorce. We affirm.

At the time of their marriage on August 2, 1975, appellee Scott R. Wehrkamp held a Bachelor of Science degree from South Dakota State University, Brookings and appellant had completed one year of college. During the first years of the marriage, appellee attended dental school at Loyola University in Chicago, Illinois, where he received a D.D.S. degree. Appellant, during this same period, completed five years of college and obtained a dental hygiene certification.

While in Chicago attending school, both parties received educational loans, grants, and gifts from relatives. Both parties also maintained part-time employment during these years.

Under the decision of the trial court, it was found that both parties had saleable skills as licensed professionals. Both parties were in good health and both had a trade or skill sufficient to maintain their accustomed station in life without financial contribution from the other party. The personal property and real estate acquired during marriage were divided equitably between the parties, each receiving roughly one-half. Appellant did not ask for alimony and it was not awarded.

The trial court further found that the future earnings of the parties, being too speculative, were not to be considered part of the property award. Also, the court did not consider appellee's education and professional license a marital asset for property division purposes. Considering the respective educational benefits, degree, certification and the contributions of both parties in obtaining these, the trial court held that neither party had established they were individually entitled to a contribution award.

Appellant contests the trial court's failure to take into consideration appellee's increased earning capacity resulting from his D.D.S. degree. Appellant claims this is the most valuable asset acquired by the parties during the term of their marriage and that it is an asset subject to appraisal. She contends it was an abuse of discretion not to consider this in dividing the marital property. *See Palmer v. Palmer*, 316 N.W.2d 631 (S.D.1982).

We are faced with this question: Is an individual's future earning capacity resulting from an advanced degree "property" in divorce cases? There is a growing body of case law on this subject throughout the various jurisdictions. *See generally*, Annot., 4 A.L.R.4th 1294 (1981). The majority view is that an advanced degree or professional license is not "property" as that term is used in divorce settlement cases. An early leading case in this area was *In re Marriage of Graham*, 194 Colo. 429, 432, 574 P.2d 75, 77 (1978), wherein it was stated:

> An educational degree ... is simply not encompassed even by the broad views of the concept of "property." It does not have an exchange value or any objective transferable value on an open market. It is personal to the holder. It terminates on death of the holder and is not inheritable. It cannot be assigned, sold, transferred, conveyed, or pledged.

An advanced degree is a cumulative product of many years of previous education, combined with diligence and hard work. It may not be acquired by the mere expenditure of money. It is simply an intellectual achievement that may potentially assist in the future acquisition of property ... it has none of the attributes of property in the usual sense of that term.

*In re Marriage of Goldstein*, 97 Ill.App.3d 1023, 53 Ill.Dec. 397, 423 N.E.2d 1201 (1981); *Grosskopf v. Grosskopf*, 677 P.2d 814 (Wyo.1984).

It was an abuse of discretion for a trial court to value husband's law degree as a marital estate asset, according to a Wisconsin Appeals Court in *DeWitt v. DeWitt*, 98 Wis.2d 44, 58, 296 N.W.2d 761, 768 (1980) (footnotes omitted).

Whether a professional education is and will be of future value to its recipient is a matter resting on factors which are at best difficult to anticipate or measure. A person qualified by education for a given profession may choose not to practice it, may fail at it, or may practice in a speciality, location or manner which generates less than the average income enjoyed by fellow professionals. The potential worth of the education may never be realized for these or many other reasons. An award based upon the prediction of the degree holder's success at the chosen field may bear no relationship to the reality he or she faces after the divorce. Unlike an award of alimony, which can be adjusted after divorce to reflect unanticipated changes in the parties' circumstances, a property division may not. The potential for inequity to the failed professional or one who changes careers is at once apparent; his or her spouse will have been awarded a share of something which never existed in any real sense.

In New Jersey, it has been held that a person's earning capacity should not be recognized as a separate, particular item of property, even where its development has been aided and enhanced by the other spouse. *Stern v. Stern*, 66 N.J. 340, 331 A.2d 257 (1975). Further, "[o]bviously, if the enhanced earning capacity itself is not distributable property, then neither is the license or degree, which is merely the memorialization of the attainment of the skill, qualification and educational background which is the prerequisite of the enhanced earning capacity and on which it is predicated." *Mahoney v. Mahoney*, 182 N.J. 598, 605, 442 A.2d 1062, 1066 (1982), *rev'd on other grounds*, 91 N.J. 488, 453 A.2d 527 (1982). It has none of the attributes of distributable property. *Goldstein*, 53 Ill. Dec. 397, 423 N.E.2d 1201.

As we did in *Saint-Pierre v. Saint-Pierre*, 357 N.W.2d 250 (S.D.1984), decided this day, we align ourselves with the majority rule in now holding that a professional degree or license and/or the potential earning capacity stemming therefrom is not distributable property. We therefore find that the trial court did not abuse its discretion in failing to consider appellee's enhanced earning capacity a marital asset subject to property division upon divorce. The factors and variables involved in such a consideration are simply too speculative and could only act to turn the possibility of inequity on the one hand into a probability of such on the other.

We note that not all courts have rejected the concept that potential earning capacity made possible by an advanced degree may be considered an asset for distribution by the court. *See In re Marriage of Horstmann*, 263 N.W.2d 885 (Iowa 1978); *Inman v. Inman*, 578 S.W.2d 266 (Ky.App. 1979). However, it was the particular circumstances of each case which motivated these decisions. In *Horstmann*, wife did not complete her formal education and provided the major source of support through employment with a bank while husband attended law school. The court found husband's law degree was conferred upon him with the aid of his wife's efforts, and thus, she should share in the potential for increase in earning capacity made possible by the degree.

Despite strong reservations to the contrary, similar circumstances prompted the holding in *Inman*, 578 S.W.2d at 268, that under "certain instances ... treating a professional license as marital property is the only way in which a court can achieve an equitable result." The court cited the most common instance as being a situation where one spouse supports the other through school, only to have the marriage dissolve immediately upon graduation. In a subsequent decision involving the same parties, *see Inman v. Inman*, 648 S.W.2d 847 (Ky.1982), the Kentucky Supreme Court expressed that it could not accept a proposition that an educational degree is, upon dissolution of a marriage, marital property. However, that court recognized the issue of fair compensation to a person who has supported his or her spouse while the other was in school, when the marriage dissolves before the family is able to realize the benefits from the spouse's advanced education. Yet, the Kentucky Supreme Court went on to express a formula in placing a value on an educational degree but expressly indicated that the degree itself was not marital property. There were two dissents to this decision.

Appellant argues that the case before us is a classic situation requiring application of equitable principles to prevent an extraordinary injustice. She claims that appellee's earning capacity was conferred upon him by her extraordinary efforts and that she sacrificed her educational degree for the benefit of her husband. Appellant further contends the trial court abused its discretion in failing to consider this substantial contribution to her husband's D.D.S. degree.

■ We concede the equities to be adjusted between the parties will vary with the facts and circumstances of each particular case.

Thus, the parties seeking divorce may be from a marriage that lasted many years in which substantial property was accumulated. An equitable division of that property should result in each party realizing the benefits of the college degree.

On the other hand, where the working spouse supports the family while the other attends college, obtains an advanced professional degree, and promptly seeks a ... divorce, there is no property accumulated to divide. The inequity of a divorce with no award to the working spouse is obvious. In this situation, an award to that spouse which would afford an opportunity to obtain the same degree under the same circumstances, or in the alternative, a sum of money equal to that benefit seems equitable; and cases falling between these two extremes should be adjusted accordingly.

*Grosskopf*, 677 P.2d at 822–23. Some authorities dub this "rehabilitative alimony." Even the majority of cases, while refusing to recognize that potential earning capacity is property, do indicate that it is "doubtless a factor to be considered by a trial judge in determining what distribution will be 'equitable' and it is even more obviously relevant upon the issue of alimony." *Stern*, 331 A.2d at 260. *Accord, DeWitt*, 296 N.W.2d 761; *In re Marriage of Vanet*, 544 S.W.2d 236 (Mo.App.1976); *see also, Hubbard v. Hubbard*, 603 P.2d 747 (Okla.1979) (consideration based on theory of unjust enrichment). However, these issues are not pertinent to this case. Appellant did not request alimony, nor is she in need of some sort of rehabilitative contribution. She has already pursued a career of her choice, one that should provide adequate support in the manner to which she is accustomed.

■ Appellant attended school concurrently with her spouse. She received a certification in dental hygiene as a result of her endeavor. Though she insists she sacrificed receiving a bachelor's degree, the record does not bear out that this was a sacrifice in furtherance of appellee's career. It was appellant's decision to pursue her certificate. She realized that which she desired. She was, and is now, only one course short of her bachelor's degree. Testimony indicates that failure to finish the course, after two correspondence attempts,

is due more to lack of motivation than anything else.

Further, the record indicates that both parties received government financial aid and help from both sets of parents in the furtherance of their respective educations. Both parties held part-time jobs throughout school. Both parties shared in household duties during this time.

Appellant received her certificate late in 1978 and did work for some six months until appellee graduated in May of 1979. Upon graduation from dental school, appellant did help appellee establish a dental practice, but was paid a regular salary for her services as a dental hygienist.

We do not dispute that "[t]o flatly refuse to find any sort of protected property interest would work the grossest inequity in certain instances." *Inman*, 578 S.W.2d at 268. It was those special instances which prompted the findings in *Inman* and *Horstmann*. But, the equities simply do not cry out in a situation such as the one before us, where the only real detriment is that appellant chose to pursue a career in a field potentially less lucrative than that of her spouse. No extraordinary injustice is apparent in this case necessitating an extraordinary remedy.

Appellant also argues that the trial court erred in failing to consider certain interests appellee allegedly has in Wehrkamp-Wehrkamp, D.D.S., P.C. Appellee and his brother, each own approximately 50% interest in this professional corporation. Appellee has an employment contract with the corporation under which he is to be paid $32,760 a year. However, for the past several years, appellee has only received one-third of that amount as salary. Appellant claims that the unpaid portion should have been credited as an asset of appellee. The additional income pursuant to the employment contract has never been collected by appellee. The corporation is a fairly new business. It has a zero value. As appellee testified, when the employment contract was drawn, he and his brother had high expectations of success. They found, shortly thereafter, that expenses were much beyond their anticipation. Therefore, cuts in salary had to be made. The court did not abuse its discretion in failing to include as an asset an amount which does not exist. Further, though the corporation has contracted to pay bonuses, they have not had any excess income to defray same. Thus, there was no error in failing to include appellee's anticipated share of bonuses. Based on an accountant's financial statement and the testimony of appellee, the trial court valued appellee's interest in the corporation and required that he pay one-half of this amount to appellant as a part of the property settlement. There was no abuse of discretion in this valuation.

The judgment of the Second Judicial Circuit Court is affirmed.

Appellant is awarded $1,000 costs and attorney's fees for this appeal.

FOSHEIM, C.J., WOLLMAN and MORGAN, JJ., and DUNN, Retired Justice, concur.

DUNN, Retired Justice, participating.

WUEST, Circuit Judge, Acting as Supreme Court Justice, not participating.